<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JOHN HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Hon. Garrett E. Brown, Jr. ) ) Civil Action No. 09-3219 (GEB) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) **MEMORANDUM OPINION** |
| Defendant. | ) ) ) |

<u>**BROWN**, **Chief Judge:**</u>

      This matter comes before the Court upon the complaint of Plaintiff John Harris ("Plaintiff" or "Harris") that alleges Defendant the Commissioner of the Social Security Administration (the "Commissioner") erroneously denied Harris's applications for benefits under the Social Security Act (the "Act"). (Compl.; Doc. No. 1.) The Commissioner has filed a brief in opposition. (Def.'s 9.1 Opp'n Br.; Doc No. 9.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, for the reasons expressed below, the Court will affirm the Commissioner's denial of Harris's benefits applications and will order this case closed.

**I.   BACKGROUND**

      Harris filed applications for disability insurance benefits under Title II of the Act on

December 20, 2005, and for supplemental security income under Title XVI of the Act on January 20, 2006. (ALJ Decision 9/4/08; A.R. p. 10.)[1]  Harris alleged disability as of April 1, 1998. (*Id.*) Both applications were denied on June 15, 2006, and upon reconsideration on December 19, 2006. (*Id.*)  Thereafter, Harris timely requested a hearing on January 23, 2007. (*Id.*)  The hearing took place on May 20, 2008 (the "Hearing") before ALJ Donna Krappa. (*Id.*)  At the Hearing, the ALJ heard testimony from Harris. (*Id.*)

Following the Hearing, on September 4, 2008, the ALJ issued her Decision that denied Harris's application for benefits. (*Id.*)  In her Decision, the ALJ summarized the record in detail and found that: (1) Harris met the insured status requirements of the Social Security Act through March 31, 2004; (2) Harris has not engaged in substantial gainful activity since April 1, 1998, the alleged onset date; (3) Harris has severe impairments, namely disorders of the back, ankle and knee; (4) that none of Harris's impairments, or combination of impairments, meets or medically equals one of the listed impairments in 20 C.F.R. Part 404; and (5) that given Harris's residual functional capacity ("RFC"), Harris cannot perform any of his past relevant work, but there are jobs in significant numbers in the national economy that Harris can perform. (*Id.* at p. 13.) Based upon these findings, the ALJ concluded that Harris was not disabled as defined by the Social Security Act and denied Harris's applications for benefits on that basis. (*Id.* at p. 18-19.) Harris timely appealed the ALJ's Decision to the Social Security Administration Appeals

---

[1] Much of the Administrative Law Judge's (the "ALJ") March 27, 2008 post-hearing decision (the "Decision") is not disputed by Harris.  Further, the non-disputed portions of the Decision appear to provide a thorough summary of the facts and procedural history of Harris's case.  As such, for the sake of economy, the Court will cite to the Decision where appropriate. Additionally, throughout this memorandum opinion the short citation "A.R." refers to the corresponding page number in the administrative record for this case.

Counsel, which ultimately denied Harris's request for review on May 4, 2009. (A.R. p. 1.)

Having exhausted his administrative remedies, Harris timely filed his present complaint in federal district court on July 2, 2009. (Compl; Doc. No. 1.) The case was reassigned to this Court on March 15, 2010. (Doc. No. 10.) In his brief filed pursuant to Local Civil Rule 9.1, Harris argues that the ALJ's Decision is not supported by substantial evidence, and is erroneous as a matter of law for the following four reasons: (1) the ALJ erred by failing to explain her conclusion that Harris's individual impairments did not meet or equal a Listing and by failing to consider the combined effect of her impairments; (2) the ALJ erred because her RFC is contradicted by the Commissioner's consulting examiner; (3) the ALJ erred in failing to properly evaluate Harris's subjective complaints of pain; (4) the ALJ erred by failing to include in the hypothetical questioning of the vocational expert all of the claimant's limitations. (Pl.'s 9.1 Br. at p. 9-10; Doc. No. 8.) Subsequently, the Commissioner filed an opposition brief pursuant to L. Civ. R. 9.1, and therein argues that all of Harris's arguments fail, and that the ALJ's Decision is supported by substantial evidence and must be affirmed. (Def.'s 9.1 Opp'n Br.; Doc. No. 9.)

## II.   DISCUSSION

### A.   Legal Standard

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death of which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments

are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step procedure for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. *Id.* If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. *Id.* Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. *Id.*; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is found capable of performing his previous work, the claimant is not disabled. *Id.* If the claimant is no longer able

to perform his prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits. *Id.* If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied his burden of proof and is automatically entitled to benefits. *Id.* If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work." *Id.* Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Id.* The step five analysis "can be quite fact specific." *Burnett v. Commissioner*, 220 F.2d 112, 126 (3d Cir. 2000).

**B.  Application**

1.      **Impairment Meeting or Medically Equal to One of the Listed Impairments**

Harris argues that at Step Three of the requisite inquiry, the ALJ did not compare the combined effects of Harris's several medical impairments with the Listings, as required by 20 C.F.R. § 404.1526(a), and that the ALJ erred in failing to find that his impairments meet or medically equal Listing 11.08. (Pl. Br. at 10-12.) Harris contends that the Commissioner's orthopedic examiner, Dr. Justin Fernando, concluded that Harris suffers from spinal cord lesions, as per his statement that Harris's "[g]rossly exaggerated knee reflex is highly suggestive of an upper motor neuron lesion," which places him within the purview of Listing 11.08. (Pl. Br. at 12; A.R. at p. 82.) Harris argues that Dr. Fernando's references to Harris's "bizarre" gait, "lordotic stance," and abnormal reflexes (A.R. p. 180) constitute disorganization of motor function, as defined by 11.04B. (Pl. Br. at 12.)

This Court decides that substantial evidence supports the ALJ's conclusion that Harris does not meet or medically equal Listing 11.08. That listing requires: "Spinal cord or nerve root lesions, due to any cause with disorganization of motor function as described in 11.04B." 20 C.F.R. Pt. 404, Subpart P, App. 1. Listing 11.04B requires: "Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." *Id.* First, the Court notes that a tethered spinal cord is not a listed impairment under Listing 11.08. Second, Dr. Fernando did not even diagnose Harris with a tethered spinal cord. Rather, the doctor stated that Harris's symptoms were "suggestive of" a tethered spinal cord and recommended that Harris undergo a neurological or neurosurgical consultation "to establish the presence or absence of a fixed spinal cord." (A.R. p. 182.) The Court concludes that this does not amount to a diagnosis causing Harris to fall under

6

Listing 11.08.  In one instance, Harris acknowledges that Dr. Fernando did not make this diagnosis, stating that the doctor asked the Commissioner "to authorize a neurological consult to establish the probability of a very serious neurological impairment, demonstrated by the physical findings, but beyond the scope of this orthopedist's expertise." (Pl. Br. at 21.)  The doctor's only diagnosis as to Harris's spine was a recognition that Harris had previously undergone spinal surgery to remove a benign lesion; this does not come within the purview of Listing 11.08.  (A.R. p. 179.)  Third and finally, the Court notes that the x-rays of Harris's lumbar spine revealed the vertebral body heights and disc spaces to be maintained, and that there was no spondylolisthesis or spondylolisis, counseling against a conclusion that Harris meets or medically equals Listing 11.08.  (A.R. p. 184.)  Because substantial evidence supports the finding that Harris does not meet or medically equal Listing 11.08, the Court concludes that Harris's argument must fail.

    Harris also argues that the ALJ erred at Step Three in failing to find that he is the medical equivalent of Listing 1.02 for "major dysfunction of a joint due to any cause." (Pl. Br. at 13.) Harris argues that the contracture of both his Achilles tendons identified by the Commissioner's examiner satisfies this Listing. (*Id.*)  Listing 1.02 can be satisfied by evidence that a claimant suffers from "gross anatomical deformity (e.g., sublaxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404, Subpart P, App. 1.  The listing also requires that a claimant show "[i]nvolvement of one major peripheral weight-bearing joint . . . resulting in inability to ambulate effectively . . .; or [i]nvolvement of one major peripheral joint in each upper extremity . . ., resulting in ability to

perform fine and gross movements effectively." *Id.* Harris argues that the condition of his Achilles tendon causes him to be unable to ambulate effectively. (Pl. Br. at 13.)

The Court does not agree with Plaintiff's application of Listing 1.02. The listing specifically requires major dysfunction of a joint, not a tendon. The orthopedic examiner did not identify any effect on Harris's ankle(s) caused by the shortening of his Achilles tendons. The examiner did indeed find that the "range of motion of [Harris's] ankles is severely limited in dorsiflexion," but attributed this to "shortening of the Achilles tendon bilaterally," and not to a joint deformity. (A.R. p. 181.) As to Harris's other joints, the examiner found that there was full range of motion of the shoulders, elbows, forearms, wrists, hips, knees, and cervical spine, and that there was no joint inflammation, effusion, or instability. (*Id.*) As to medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of any of Harris's joints, the radiology report states that the "A-P and lateral views of [both the right and left] knee[s] reveal mild narrowing of the medial femorotibial joint space," and that the "tibial spines [on both knees] reveal spurring." (*Id.* p. 184.) While these images do indicate joint space narrowing, they are insufficient without a showing of major joint dysfunction, which the Court concludes Harris did not demonstrate.

Lastly, to meet Listing 1.02, Harris must show that he is unable to ambulate effectively. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.02. "Inability to ambulate effectively means an extreme limitation of the ability to walk," and is defined as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(B)(2)(b)(1). "To ambulate effectively, individuals must be capable of sustaining a

8

reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.00(B)(2)(b)(2). The Court concludes that there is substantial evidence in the record Harris is able to ambulate effectively as defined by Section 1.00. The orthopedic examiner stated that Harris "uses no assistive devices" and Dr. Weber, another doctor who examined Harris, found that Harris "ambulates independently without an assistive device and he is independent in activities of daily living." (A.R. p. 196.) Dr. Weber also concluded that Harris is able to walk at a reasonable pace. (*Id.* p. 199.) In light of the medical evidence, this Court concludes that the ALJ did not err in finding that Harris did not meet or medically equal Listing 1.02, because Harris does not display a major dysfunction of a joint and he is able to ambulate effectively.

In his final contention as to the ALJ's Step 3 errors, Harris argues that the ALJ wrongly concluded that he does not meet or medically equal Listing 1.04. (Pl. Br. at 14.) The ALJ found that the medical evidence did not establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis to satisfy Listing 1.04. (A.R. p. 13.) That listing covers "[d]isorders of the spine . . . resulting in compromise of a nerve root including the causa equinal or the spinal cord. With (A) Evidence of nerve root compression characterized by neuro-atomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or (B) Spinal arachnoiditis . . . or (c) Lumbar spinal stenosis." 20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04. The orthopedic examiner concluded that Harris's spine displayed flexion limited to about sixty degrees, with the result that Harris was "unable to proceed any further because of the

unsteadiness of the claimant to bend forward, because he was standing on his tiptoe." (A.R. p. 181.)  The examiner found that Harris had no sensory abnormalities, but that Harris's reflexes were abnormal bilaterally.  (*Id.*)  The examiner also found that Harris's straight-leg raise was forty-five degrees bilaterally and ninety degrees in the upright position,  (*Id.*) while Harris's straight leg raise with Dr. Weber was negative bilaterally in the supine position.  (*Id.* p. 196.)

This Court concludes that the ALJ correctly concluded that these medical findings are insufficient to satisfy Listing 1.04.  The ALJ concluded that the medical evidence does not establish that Harris displays nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis.  (*Id.* p. 13.)  Although Harris's spine flexion was limited to about sixty degrees and his reflexes were abnormal bilaterally, Harris's straight-leg raising test was negative, and not positive, as required by Listing 1.04.  Because the Listing connects the requisite symptoms with the word "and," Harris must show that he satisfies every symptom.  This Court concludes that because Harris's straight-leg raising test did not satisfy Listing 1.04, the ALJ was correct in concluding that Harris did not meet or medically equally that listing.

      **2.**     **Residual Functional Capacity**

Harris argues that although the ALJ was required to articulate a clear and convincing evidentiary basis for her RFC assessment, the restrictions the ALJ included in Harris's RFC are irrelevant and "pose no restrictions at all." (Pl. Br. at 15-16.)  For example, Harris contends that he must be near a bathroom while working because of his alleged "neurological/spinal cord injuries," and that the ALJ ignored the vocational expert's opinion that "very little if any leeway is afforded employees" to cease production outside of their allotted breaks in the jobs the ALJ cited.  (*Id.* at 17-18.)  Harris concludes that this restriction, therefore, is irrelevant to the evidence

of the case. (*Id.* at 18) Harris makes similar arguments as to the ALJ's restrictions to low stress tasks, and required breaks, concluding that the ALJ's determination is an "impossibly optimistic assessment of plaintiff's capabilities." (*Id.* at 18-19.)

Additionally, Harris argues that the ALJ adopted in its entirety the opinion of Arthur Pirone as her assessment of Harris's RFC, and that the ALJ offered no other evidentiary basis for that assessment. (*Id.* at 19.) Harris contends that Pirone determined his RFC without examining him, because there is no evidence in the record that Pirone is a doctor, and because Pirone's RFC contradicts the doctors who actually examined Harris. (*Id.* at 19-20.)

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." 1996 SSR LEXIS 5 (SSR 1996). Additionally, the ALJ's RFC assessment must "be accompanied by a clear and satisfactory explanation of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Here, the ALJ found that Harris had the RFC to perform light work which did not involve standing more than four hours and sitting for six hours per day; that permit at least three breaks during the workday; that require only occasional use of ladders, rope, scaffolds, ramps or stairs;

that are simple and unskilled; that are low stress; that provide ready access to the bathroom; and other restrictions. (A.R. p. 13.) There is no indication that the ALJ relied solely on Pirone's assessment, or that she accepted it in its entirety. In fact, quite the opposite is true. The ALJ quoted at length from the orthopedic examiner's report, the medical professional on whose opinion Harris relies as most favorable to him. (A.R. p. 14-15; Pl. Br. at 19-20.) Additionally, the ALJ quoted the findings of no less than three other doctors and examinations. (A.R. p. 15-16.) Furthermore, the ALJ stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.* p. 13.) The ALJ also gave consideration to Harris's subjective complaints. (*Id.* p. 16.)

As to Harris's claim that Pirone's RFC determination contradicts those doctors who examined Harris, the Court finds this argument entirely without merit. In fact, multiple consultative examiners reached the same conclusions as Pirone. Pirone's conclusion that Harris can stand for at least two hours in an eight-hour workday and can sit for about six hours in an eight-hour workday (*Id.* p. 201) is exactly the same conclusion that Dr. Raymond Briski came to in the initial RFC assessment of Harris. (*Id.* at 186.) Pirone's conclusion is warranted because Dr. Fernando concluded that Harris could walk on his tiptoes (*Id.* p. 180) and because three examiners concluded that Harris can walk effectively without an assistive device: Dr. Justin Fernando (*Id.* p. 180), Dr. Marc Weber (*Id.* p. 196), and Dr. Pesho S. Kotval (*Id.* p. 184). Additionally, although Harris argues that Pirone's diagnosis of lower back pain was in fact "not a diagnosis" (Pl. Br. at 20), Dr. Fernando also came to the same diagnosis. (A.R. p. 182.) In light of the evidence that the ALJ relied on the findings of several medical professionals in making her

RFC determination and because these findings largely agree with each other, this Court concludes that the ALJ gave a clear and satisfactory explanation of the basis on which her RFC determination rests.

### 3. Analysis of Harris's Subjective Complaints of Pain

Next, Harris argues that the ALJ did not properly consider his subjective complaints of pain, but rather "rejected plaintiff's pain and did not include it in the RFC." (Pl. Br. at 26.) He argues that the ALJ did not make specific findings in evaluating his subjective pain, as she was required. The ALJ followed a two-step process in which she first determined whether there was any underlying medically determinable physical or mental impairment(s) that can be shown through medically acceptable clinical and laboratory diagnostic techniques. (A.R. p. 14.) Second, the ALJ evaluated the intensity, persistence, and limiting effects of Harris's symptoms to determine the extent to which they limited his ability to perform basic work activities. (*Id.*)

Social Security Ruling No. 96-7p sets out the requirements for assessing the credibility of an individual's statements in a disability claim. 1996 SSR LEXIS 4 (SSR 1996). The rule provides: "When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." 1996 SSR LEXIS 4 (SSR 1996). Here, the ALJ considered the intensity, persistence, and limiting effects of Harris's symptoms, and found that while Harris's medically determined impairments could reasonably be expected to produce

13

the symptoms he alleges, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (A.R. p. 16.)  The ALJ explained that she found Harris's statements not credible because his complaints of fatigue, weight loss, and other symptoms, which Harris claims preclude him from engaging in any significant work activity, were not credible or consistent with Social Security Ruling 96-7p and 20 C.F.R. 416.969. (*Id.*)  Furthermore, the ALJ stated that she considered the following factors in making her determination:  "(1) the nature, location, onset, duration, frequency  radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g. movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities and work record." (*Id.* at 17.)  The Court concludes that the ALJ did not summarily "reject" Harris's complaints of pain, as the claimant argues, but carefully considered his complaints in reaching her RFC determination, as evidenced by her explanation detailing how she arrived at this finding.  The Court thus concludes that there is substantial evidence to support the ALJ's determination that Harris's complaints of pain and the limiting effects of these symptoms were not credible.

   Finally, Social Security Ruling No. 96-7p provides that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  An individual's statements about the intensity and persistence of pain or other

symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." 1996 SSR LEXIS 4 (SSR 1996). The Court concludes that the ALJ considered the entire case record, as she discussed the medical findings of numerous doctors and examiners at length (A.R. p. 14-17), Harris's statements about his symptoms and their effects on his daily activities (*Id.* p. 16), and the opinion evidence of Arthur Pirone (*Id.* p. 17).

Additionally, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 SSR LEXIS 4 (SSR 1996). Here, the ALJ did not merely conclude that Harris's allegations were considered and were not credible. The ALJ provided the rationale for her conclusion that Harris's complaints of pain were not credible, as discussed above. Specifically, the ALJ found that Harris's complaints of fatigue, weight loss, and other symptoms were not credible or consistent with Social Security Ruling 96-7p and 20 C.F.R. 416.969, and detailed the factors she considered in evaluating his subjective complaints. (A.R. p. 16-17.)

In light of the evidence, this Court concludes that substantial evidence supports the RFC assessment, including the findings of the state agency medical consultants, consultative examiners, and Harris's subjective complaints. (A.R. p. 14-17.)

### 4.        The ALJ's Hypothetical Questioning of the Vocational Expert

Harris further argues that the ALJ erred in her hypothetical questions to the vocational expert.  Harris asserts that the ALJ's hypothetical questions to the vocational expert did not adequately convey his "moderate difficulty in maintaining social functions" and "'moderate difficulties' in concentration, persistence, keeping pace, keeping a schedule," and that the hypotheticals did not include his "credibly established mental limitations."  (Pl. Br. at 27- 28.)

The Third Circuit has warned that "a hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments." *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting and adding emphasis to *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).  However, the Court qualified that it "[does] not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant," but rather that "the hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  This means that "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Id.* (emphasis in original).

Here, the Court finds Harris's argument that the ALJ failed to consider his mental limitations unavailing.  In fact, Harris did not allege that he had any mental impairment, and there is no medical evidence that Harris suffers from a mental impairment.  (A.R. p. 128, 179- 212.)  The record contains not one reference to Harris's mental state or any shortcomings thereof.

In sum, the court concludes that substantial evidence supports the ALJ's finding that Harris is not disabled and the ALJ properly evaluated the evidence in the record.  The ALJ properly concluded that Harris does not meet or medically equal a listed impairment, properly

evaluated the record to determine Harris's RFC, and properly considered Harris's subjective complaints of pain.

### III.  CONCLUSION

For the foregoing reasons, this Court will affirm the Commissioner's denial of Harris's benefits applications.  An appropriate form of order accompanies this memorandum opinion.

Dated: July 16, 2010

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
